## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| C.B. HARRIS & COMPANY, INC.   : | |
|        : | |
|     Plaintiff,     : | |
|        : | |
|    v.        : | Civil Action No. 14-1096 (GK) |
|        : | |
| WELLS FARGO & COMPANY,    : | |
| And        : | |
| ONE OR MORE JOHN DOES,    : | |
|        : | |
|     Defendants.    : | |
|        : | |

### MEMORDANDUM OPINION

Plaintiff C.B. Harris & Company, Inc. ("Harris") brings this action against Wells Fargo Bank, N.A.[1] ("Wells Fargo") and one or more John Does, seeking monetary damages for breach of contract. This matter is before the Court on Defendant's Motion to Dismiss ("Motion") [Dkt. No. 8-1]. Upon consideration of the Motion, Opposition ("Opp'n") [Dkt. No. 9], and Reply ("Reply") [Dkt. No. 10], and for the reasons set forth below, the Court concludes that Harris's claim is time-barred by the D.C. Statute of Limitations and thus the Motion shall be **granted**.

---

[1]Plaintiff incorrectly named Defendant as "Wells Fargo & Company" in its First Amended Complaint. Wells Fargo & Company is a bank holding company, of which Wells Fargo Bank, N.A. is a wholly owned subsidiary. Motion at 1.

I.    **Background**

   A. **Factual Background**[2]

   Harris was started by its president, Cynthia B. Harris ("Ms. Harris"), and is a District of Columbia corporation that provides government and corporate services, including document conversion, records management, training and development, and project management. In 2001, Ms. Harris hired her cousin, Howard E. Person, Jr. ("Person"), as Harris's Finance Director. Motion at 1. Person did not have a college degree, had previously been convicted of stealing money from an employer, and had little relevant experience in finance. Reply at 1.

   On or about October 20, 2003, Harris opened a factoring account[3] with Commerce Funding Corporation (now Wells Fargo). FAC ¶ 6. The parties agreed upon the terms of the bank services that Wells Fargo would provide and, at an unspecified time, they reduced their oral agreement to writing. FAC ¶¶ 7, 8. While Harris

---

[2] For purposes of ruling on a motion to dismiss, the factual allegations of the complaint must be presumed to be true and liberally construed in favor of the plaintiff. Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc., 525 F.3d 8, 15 (D.C. Cir. 2008). Therefore, the facts set forth herein are taken from Plaintiff's First Amended Complaint ("FAC") [Dkt. No. 7].

[3] "Factoring is a type of financing where one business (the factoring client) sells its right to receive payment for goods sold or services rendered to customers (account debtors) to another business (the factor) at a discounted price." New Century Fin., Inc. v. Olympic Credit Fund, Inc., 487 Fed. App'x 912, 913 (5th Cir. 2012).

does not have a copy of the agreement, Wells Fargo has not disputed the existence of a contract.

Harris contends that the terms of the contract require Wells Fargo to prevent unauthorized persons from accessing Harris's funds. FAC ¶¶ 11, 12. Ms. Harris is the only person authorized to withdraw funds from Harris's account. Proof of her identity-- either her ID or signature--is required before any of Harris's funds can be withdrawn from the account. FAC ¶¶ 13, 14.

On or about March 19, 2008, Wells Fargo wired $695,892.10 to a SunTrust Bank account controlled by Person. FAC ¶ 19. On or about May 13, 2008, Wells Fargo wired another $319,725.33 to Person's SunTrust Bank account. FAC ¶ 20. Harris contends that neither transfer was authorized by it or Ms. Harris. FAC ¶ 22.

From 2008 to 2011, while serving as Harris's Finance Director, Person allegedly defrauded Harris out of over $3 million. FAC ¶ 24. Harris was not aware of the alleged fraud prior to Person's abrupt resignation on September 26, 2011. FAC ¶¶ 25, 26. Upon Person's resignation, Harris investigated matters affecting its financial affairs and thereafter became aware that Person had mishandled Harris's funds. FAC ¶¶ 26, 27.

On or about January 24, 2012, Harris identified unauthorized transfers by Person from one of Harris's accounts at SunTrust Bank, amounting to approximately $1,597,808.30. FAC ¶ 29. On July 29,

2013, in the course of a federal investigation into criminal charges against Person, Ms. Harris was provided with a document bearing alleged forgeries of her signature. FAC ¶ 33. Harris does not specify the nature of the document, but states that it was at this time that it first became aware of Wells Fargo's alleged breach of its contractual duties. FAC ¶ 33.

Person allegedly "concealed a number of unauthorized transfers . . . by denying [Ms.] Harris access to certain statements and by creating phony invoices and reports." FAC ¶ 28. Additionally, at Person's request, Wells Fargo sent the monthly bank statements for Harris's factoring account to Person's personal mailing address and not to Harris. FAC ¶ 32.

**B. Procedural Background**

Plaintiff filed its Complaint with this Court on June 28, 2014. [Dkt. No. 1] and the FAC on August 18, 2014, alleging breach of contract. FAC ¶ 23. On September 04, 2014, Wells Fargo filed the present Motion to Dismiss [Dkt. No. 8-1]. Wells Fargo argues that the claim must be dismissed because it is untimely and fails to state a valid legal claim. See Motion at 5, 7. Plaintiff filed its Opposition [Dkt. No. 9] on September 18, 2014, and Wells Fargo filed its Reply [Dkt. No. 10] on September 29, 2014.

## II.   **Legal Standard**

To survive a motion to dismiss under Rule 12(b)(6) for failure
to state a claim, the plaintiff need only plead "enough facts to
state a claim to relief that is plausible on its face" and to
"nudge[ ] [his or her] claims across the line from conceivable to
plausible." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570
(2007). "[O]nce a claim has been stated adequately, it may be
supported by showing any set of facts consistent with the
allegation in the complaint." Id. at 563.

Under the Twombly standard, a "court deciding a motion to
dismiss must not make any judgment about the probability of the
plaintiff's success . . . [,] must assume all the allegations in
the complaint are true (even if doubtful in fact) . . . [, and]
must give the plaintiff the benefit of all reasonable inferences
derived from the facts alleged." Fame Jeans Inc., 525 F.3d at 17
(internal citations and quotation marks omitted). The court does
not, however, accept as true "legal conclusions or inferences that
are unsupported by the facts alleged." Ralls Corp. v. Comm. On
Foreign Inv. In U.S., 758 F.3d 296, 315 (D.C. Cir. 2014) (citation
omitted). Furthermore, a complaint which "tenders 'naked
assertion[s]' devoid of 'further factual enhancement'" will not
suffice. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting
Twombly, 550 U.S. at 557) (alteration in Iqbal).

### III.   Analysis

#### A. D.C. Statute of Limitations

##### 1. The Discovery Rule

The parties agree that Plaintiff's claim is subject to a three-year statute of limitations. D.C. Code § 12-301(7). However, the parties disagree with regard to when the cause of action accrued. If Harris's cause of action accrued at the time of the transfers from Harris's factoring account with Wells Fargo to Person's account, namely on March 19, 2008, or May 13, 2008, the claim is barred by the statute of limitations. Harris though, argues that the discovery rule applies and therefore the cause of action did not accrue until July 29, 2013, when Harris "first discovered some evidence of Wells Fargo's [alleged] wrongdoing." Opp'n at 3-4. Therefore, if the discovery rule is applicable, Harris's cause of action may not be time-barred.

As a general rule, "[w]here the fact of an injury can be readily determined, a claim accrues for purposes of the statute of limitations at the time the injury actually occurs." Colbert v. Georgetown Univ., 641 A.2d 469, 472 (D.C. 1994) (en banc). Where the injury is not apparent or the relationship between the injury and the tortious conduct is obscure, courts will determine when the claim accrues through application of the discovery rule. See Burns v. Bell, 409 A.2d 614, 615-16 (D.C. 1979); Bussineau v.

President & Dirs. of Georgetown College, 518 A.2d 423, 425 (D.C. 1986). The discovery rule provides that a cause of action accrues when the plaintiff has either actual notice of her cause of action, or is deemed to be on inquiry notice. See Diamond v. Davis, 680 A.2d 364, 372 (D.C. 1996).

Wells Fargo argues that the discovery rule does not apply because Harris could and should have discovered the harm through reasonable diligence. The District of Columbia Court of Appeals has articulated four factors for courts to consider when determining application of the discovery rule. These four factors are: (1) the justifiable reliance of a plaintiff on the professional skills of those hired to perform their work, (2) the latency of the deficiency, (3) the balance between the plaintiff's interest in having the protection of the law and the possible prejudice to the defendant, and (4) the interest in judicial economy. Ehrenhaft v. Malcolm Price, Inc., 483 A.2d 1192, 1202-03 (D.C. 1984); see also Kuwait Airways Corp. v. Am. Sec. Bank, N.A., 890 F.2d 456, 461 (D.C. Cir. 1989), on reh'g (Jan. 10, 1990).

### 2. The Discovery Rule Does Not Apply

In evaluating the first factor, justifiable reliance, the ability of an ordinary person to detect the violation is critical. See Kuwait Airways, 890 F.2d at 461 (citing Woodruff v. McConkey, 524 A.2d 722, 727 (D.C. 1987)). In Kuwait Airways, the court ruled

-7-

that the reliance factor weighed against application of the discovery rule because "an ordinary business could have detected the siphoning off of funds within a three-year period of their conversion, without hiring another professional." Id. Similarly, Harris is an "ordinary business," which could have detected the allegedly unauthorized fund transfers within the three-year statute of limitations period.

While Harris should have been able to rely on Wells Fargo to act in a reasonable manner, "the issue of the parties' duties to one another goes to the merits in a case where the discovery rule applies, and not to the prior question whether it should apply." Id. (internal citation and quotation marks omitted). Therefore, the reliance factor militates against application of the discovery rule.

The second factor is the latency of the deficiency. There is a latency of the deficiency when the actual injury does not manifest itself until a long period of time after the negligent act. See Woodruff, 524 A.2d at 727. For example, in cases of asbestosis or a construction design deficiency, a long incubation period may cloud an otherwise apparent relationship between the injury and the alleged wrongdoing.

The alleged injury to Harris--the loss of money--is not one that is latent in nature, as it occurred immediately upon Wells

-8-

Fargo's alleged breach of contract by permitting the unauthorized transfers. In Kuwait Airways, the court ruled that "the injury to the payee in a conversion case manifests itself at the time the wrongful act occurs--that is, when the forger deposits or cashes the check." 890 F.2d at 461-62. Here, similarly, when the transfers were complete, the alleged injury was capable of being discovered. Therefore, this factor also weighs against applying the discovery rule.

Nor does the balance of the competing interests favor application of the discovery rule. The "determination as to when a claim accrued has been guided by considerations of basic fairness . . . ." Farris v. Compton, 652 A.2d 49, 55 (D.C. 1994). So guided, a court should favor application of the discovery rule when "the magnitude of the injury to the plaintiff and his interest in relief" outweighs "the potential prejudice to the defendant and the latter's interest in being free from stale claims." Burns, 409 A.2d at 616.

The magnitude of the injury to Harris and its interest in relief is obviously substantial. In addition, the search for truth will likely not be seriously impaired by the loss of evidence. However, as the court in Kuwait Airways emphasized, "[t]he finality of transactions promoted by an ascertainable definite period of liability is essential to the free negotiability of instruments on

-9-

which commercial welfare so heavily depends . . . ." 890 F.2d at 462 (quoting Fuscellaro v. Indus. Nat'l Corp., 368 A.2d 1227, 1231 (R.I. 1977). As such, the balance of competing interests favors Wells Fargo and militates against invocation of the discovery rule.

The fourth factor of judicial economy does not weigh for or against applying the discovery rule. Denying application of the discovery rule here would not "encourage litigation in the first instance, rather than as a last resort." Ehrenhaft, 483 A.2d at 1203.

In sum, this breach of contract claim is not one that justifies application of the discovery rule. The injury—the loss of money--is by nature apparent at the time of the alleged wrongful transfers, and the relationship between the injury and Wells Fargo's alleged breach of contract is not obscure. The four factors discussed above also weigh against application of the discovery rule. Therefore, the Court concludes that the discovery rule is not applicable to Harris's claims.

### 3. Fraudulent Concealment

Plaintiff argues that, even if the discovery rule is not applicable, fraudulent concealment should still toll the statute of limitations. Where the basis of a cause of action is fraudulently concealed from a plaintiff, courts have created an exception to the "time of the act" rule. See William J. Davis,

Inc. v. Young, 412 A.2d 1187, 1191 (D.C. 1980). When the "defendant [has] done something of an affirmative nature designed to prevent discovery of the cause of action," the statute of limitations will not commence to run until the plaintiff discovers or has a reasonable opportunity to discover the wrong. Id. (citing Searl v. Earll, 221 F.2d 24 (D.C. Cir. 1954)).

Harris states that Wells Fargo concealed Person's alleged embezzlement by diverting its bank statements to Person, but it has not alleged that Wells Fargo did so fraudulently or in order to conceal the alleged breach of contract.[4] Opp'n at 5. In the absence of any allegation of fraudulent action by Wells Fargo, the Court concludes that there is no justification for tolling the statute of limitations.

**B. Failure to State a Claim**

Having found that Harris's claim is barred by the D.C. Statute of Limitations, the Court need not reach Defendant's contention that Plaintiff has failed to state a claim.

---

[4]  Harris also contends that Wells Fargo concealed Person's alleged embezzlement by refusing Harris's requests to provide bank statements. Opp'n at 5. This contention is not relevant for purposes of determining the applicability of fraudulent concealment, as Harris has not indicated that it requested the statements before it was aware of its cause of action against Wells Fargo. Therefore, it cannot be said that Wells Fargo was attempting to fraudulently conceal Harris's cause of action.

-11-

## IV.   Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss shall be **granted**. An Order shall accompany this Memorandum Opinion.


July 6, 2015                          _Gladys Kessler_
                                      Gladys Kessler
                                      United States District Judge


**Copies via ECF to all counsel of record**


-12-